IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NORMAN R. TURNER, JR.                                        PLAINTIFF

v.                         CIVIL NO. 06-2208

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Norman R. Turner, Jr., brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security (Commissioner) finding him entitled to a closed period of disability benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

Plaintiff protectively filed concurrent applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments on December 15, 2004,[2] alleging an inability to work since March 26, 2002.[3] (Tr. 11, 74). Plaintiff's application was denied initially and on reconsideration. Pursuant to plaintiff's request, a hearing *de novo* before an administrative law

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] We note the ALJ also reopened the decision made on the May 7, 2004, application for DIB. (Tr. 11, 71-73).

[3] Plaintiff amended his alleged onset date to June 27, 2003, at the March 14, 2006, administrative hearing. (Tr. 275).

judge (ALJ) was held on March 14, 2006, at which plaintiff, represented by counsel, and a vocational expert (VE) appeared and testified. (Tr. 269-295).

After considering all of the evidence of record, the ALJ rendered a decision on July 20, 2006, finding that plaintiff was disabled under the Act for a closed period of time, March 7, 2003, through March 21, 2004, but that plaintiff's condition medically improved and his disability ended on March 21, 2004. (Tr. 11-22). The ALJ found that plaintiff's impairment, or combination of impairments, do not meet or equal an Appendix 1 listing. The ALJ concluded that as of March 22, 2004, plaintiff possessed the residual functional capacity (RFC) to lift and/or carry fifteen pounds; to push and/or pull fifteen pounds; to stand and/or walk one hour in an eight-hour workday; to sit eight hours in an eight-hour workday; and to occasionally stoop, squat, crouch, crawl and climb stairs but can never climb ladders or scaffolds. The ALJ found plaintiff needs to work on even ground and surfaces when standing and walking and that plaintiff is unable to drive. The ALJ further found plaintiff's grip strength is only fifty percent of normal in both hands and that he must avoid unprotected heights. Finally, the ALJ determined that due to a severe hearing loss in his left ear, plaintiff must be able to look at the person who is speaking to him if that person is speaking at a normal conversation/volume but that he has no difficulty hearing speech in a loud voice. (Tr. 18). With the use of VE testimony, the ALJ found plaintiff is able to perform other work as an electronics assembler and a compact assembler.

The decision of the ALJ became the final decision of the Commissioner when plaintiff's request for review was denied by the Appeals Council on October 19, 2006. (Tr. 3-5).

Both parties have submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 8, 9).

2

**Evidence Presented:**

At the administrative hearing before the ALJ on March 14, 2006, plaintiff was forty-seven years of age. (Tr. 272). Plaintiff testified he obtained an eighth grade education. (Tr. 272). Plaintiff testified that he was able to read well enough to understand a newspaper but was not able to do simple arithmetic well. (Tr. 272-273). The record reflects plaintiff's past relevant work consisted of work as a maintenance worker. (Tr. 273). Plaintiff testified he worked as a maintenance worker until March 7, 2003. (Tr. 273, 279).

The pertinent medical in this case reflects the following. Plaintiff sustained an on-the-job injury in March of 2002, that resulted in a calcaneal fracture and need for surgical intervention. (Tr. 182-193, 204-212, 214-219, 252-257, 262-263, 268). Plaintiff then underwent the removal of hardware in January of 2004. (Tr. 194-201).

In progress notes dated March 22, 2004, Dr. Jason H. Pleimann reported plaintiff had improved some since the removal of hardware but that plaintiff was still having some diffuse hindfoot discomfort when he was on his feet. (Tr. 203). Upon examination, Dr. Pleimann noted no appreciable motion to the subtalar joint and mildly limited ankle motion. Plaintiff's wounds were noted to be well healed with some mild swelling. Dr. Pleimann stated plaintiff was "doing well." Dr. Pleimann opined plaintiff had reached maximum improvement. Dr. Pleimann stated plaintiff's permanent work restrictions included brief periods of standing during the day, brief periods of walking that encompassed less than ten percent of the day, and no work on uneven ground or at heights. Dr. Pleimann recommended plaintiff perform work sitting.

In a letter dated April 27, 2004, Dr. Pleimann stated plaintiff sustained a permanent impairment to his right foot. (Tr. 202). Dr. Pleimann opined plaintiff had a permanent 4% whole person impairment, 10% lower extremity impairment and 14% foot impairment.

On February 4, 2005, plaintiff underwent a general physical examination performed by Dr. Garry Stewart. (Tr. 230-237). Plaintiff reported experiencing left hip pain, right foot pain, right knee pain and difficulty standing. (Tr. 230). Upon examination, Dr. Stewart noted plaintiff could hear normal conversation but that he had a fifty percent hearing loss. Dr. Stewart found plaintiff had a normal range of motion in his cervical and lumbar spine, but exhibited a reduced dorsiflexion and plantar extension of his right ankle. Dr. Stewart noted plaintiff's reflexes were 1+ in his biceps, triceps, patellar and Achilles. Plaintiff did not exhibit muscle weakness or atrophy. Dr. Stewart noted plaintiff had an abnormal gait and coordination. (Tr. 234). Dr. Stewart noted plaintiff could hold a pen and write, touch fingertips to palm, grip fifty-percent bilaterally, oppose thumb to fingers, pick up a coin, and stand and walk without assistive devices. Dr. Stewart found plaintiff was unable to walk on heel and toes and that plaintiff could squat and arise from a squatting position normally for his weight. (Tr. 234). Dr. Stewart indicated that plaintiff was oriented to time, person and place and he did not see evidence of psychosis or a mood disorder. Plaintiff was diagnosed with tobacco abuse, 50% hearing, hypertension, tachycardia, obesity and degenerative joint disease of the right ankle. (Tr. 236). Dr. Stewart opined plaintiff had moderate limitations with standing; moderate limitations with walking; no sitting limitations; mild lifting and carrying limitations; no difficulty handling, fingering or seeing; and severe limitations in hearing.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion:**

After reviewing the evidence of record, the ALJ determined that from March 7, 2003, though March 21, 2004, plaintiff was disabled under the Act and should receive disability benefits for that closed period of time. However, on March 22, 2004, the ALJ determined plaintiff was no longer disabled as he experienced a medical improvement. Plaintiff argues the ALJ erred in finding he was no longer disabled as of March 22, 2004.

While the ALJ used the medical-improvement standard when determining plaintiff's alleged disability after March 21, 2004, we note in the Eighth Circuit when the ALJ determines the fact, extent and duration of a claimant's disability in one proceeding the application of the medical-improvement standard is not required. *Camp v. Heckler*, 780 F.2d 721, 721-22 (8th Cir. 1986); *Ness v. Sullivan*, 904 F.2d 432, 434 (8th Cir. 1990). So, the task before this court is to

AO72A
(Rev. 8/82)

determine whether the ALJ's determination that plaintiff could perform substantial gainful work as of March 22, 2004, is supported by substantial evidence of record.

Plaintiff argues that the ALJ erred in determining plaintiff's alleged hip, knee, back and shoulder pain, hypertension, tachycardia and obesity were not severe impairments. The sequential evaluation process may only be terminated at step two when the impairment or combination of impairments would have no more than a minimal effect on plaintiff's ability to work. *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir.1996)*, citing Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991).

The evidence of record reveals plaintiff reported experiencing hip, foot, shoulder, and knee pain when he underwent his consultative examination in February of 2005. However, with the exception of plaintiff's right foot pain there is no evidence showing plaintiff reported experiencing pain in his hips, knee, back and shoulder to any medical profession, with the exception of the consultative examiner, at any time during the relevant time period. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent w/allegations of pain). With regard to plaintiff's alleged hypertension and tachycardia, Dr. Stewart made these diagnoses but there is no evidence suggesting plaintiff has been treated for these impairments and Dr. Stewart fails to provide medically accepted data to support his opinion. *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (citations omitted). Finally, with regard to plaintiff's alleged obesity, again the only time this is mentioned is in the assessment completed by Dr. Stewart when he notes plaintiff can squat and arise normal for his weight and diagnosed plaintiff obesity. A review of the record fails to provide evidence that plaintiff's obesity impacts his overall RFC. Based on the record as a whole we find substantial evidence

7

supports the ALJ's determination that plaintiff's alleged hip, knee, back and shoulder pain, hypertension, tachycardia and obesity are not severe impairments.

We will now discuss the ALJ's determination regarding plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

With regard to plaintiff's calcaneal fracture, the medical evidence reveals that on March 22, 2004, Dr. Pleimann noted plaintiff's wounds were well healed with some mild swelling. Dr. Pleimann stated plaintiff was "doing well." Dr. Pleimann opined plaintiff had reached maximum improvement and that plaintiff's permanent work restrictions included brief periods of standing

8

during the day, brief periods of walking that encompassed less then ten percent of the day, and no work on uneven ground or at heights. Dr. Pleimann recommended plaintiff perform work sitting. Dr. Pleimann did not opine that plaintiff was unable to perform substantial gainful activity

The record further reveals that plaintiff has not sought any treatment since 2004 and is not taking prescription pain medication. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment)*; Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain); *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (ALJ may consider claimant's failure to take prescription medication and seek ongoing treatment to be inconsistent with complaints*); Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).

Although plaintiff contends that his failure to seek medical treatment is excused by his inability to afford treatment, plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment, due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). There is also evidence showing plaintiff continued to smoke at least through February of 2005. (Tr. 236). As such, we cannot say that his financial situation prevented him from receiving medical treatment.

9

Plaintiff testified that he also had severe hearing loss. This hearing loss was noted by Dr. Stewart and discussed by the ALJ. The ALJ noted there is no evidence showing plaintiff uses an amplifier on his telephone to hear conversations or that he uses a hearing aid. Plaintiff also testified that he could distinguish speech if a person spoke loudly or if he is able to look at the person speaking to him. As such, we find substantial evidence of record to support the ALJ determination that while plaintiff does have hearing loss this impairment is not disabling.

Plaintiff also reports having a weak grip. Dr. Stewart noted plaintiff had a fifty percent grip strength bilaterally. However these is no evidence showing plaintiff sought treatment for problems with the use of his hands. As such, we find substantial evidence to support the ALJ's determination that plaintiff does not have a disabling hand impairment.

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. In December of 2004, plaintiff reported he could take care of his personal needs, prepare simple meals, mow the lawn with a riding lawn mower, shop, pay bills, count change, handle a savings account and use a checkbook, watch television, fish, and go places with people to talk. (Tr. 120-127). Plaintiff also reported that he started working as an egg collector, four or five hours a day, for five days a week, on November 1, 2004, through around November 22, 2004, when he was laid off. (Tr. 118). While the ALJ did determine this work was not substantial gainful activity, this activity does show that plaintiff was able to perform some activity. It is also noted that plaintiff did not stop working as an egg collector due to his impairment. This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th

Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

We would note plaintiff alleges he is basically illiterate and cannot do simple arithmetic well. The record shows plaintiff completed the eighth grade in regular classes, can understand what he reads in a newspaper, can pay bills, can count change, can handle a savings account and can use a checkbook and money orders. (Tr. 97, 123, 272-273). Plaintiff also reported he was able to read in June of 2004. (Tr. 92). While the evidence may show plaintiff does not read very well, it clearly shows plaintiff is not illiterate.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all

11

relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a significant range of sedentary work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluation of a non-examining consultant. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on his activities during the relevant time period that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on our above discussion of the medical evidence, plaintiff's failure to seek continued medical treatment and plaintiff's daily activities, we believe substantial evidence supports the ALJ's RFC assessment.

After assessing plaintiff's RFC, the ALJ called a vocational expert to testify regarding the availability of jobs plaintiff could perform. We find that the hypothetical questions posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296-96 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 26th day of December 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)